Tactical v. Defense Tech. Mr. Nash whenever you're ready. Good morning. May it please the court. Doug Nash on behalf of the appellant. The two patents in suit the 086 and the 133 patents by applying the wrong test to determine their priority. The two patents in suit claim priority to the filing date of their grandparent application which issued as the 562 patent. But even if we were to agree with you that the district court applies the wrong test that it compared to the two things that compared were wrong. It compared the parent to the grandparent and what it should have done is look at the claims of the patented issue, say is there support for them in the parent? If yes then is there support for them in the grandparent? Okay you can go that far back. So let's just accept for now that we agree with you that the district court messed up a test and that the test should be is there support in the parent for what's disclosed in the child? Where is the support, I think your biggest hurdle here, in the parent for the claims that you now claim in this child? I mean this is a convoluted prosecution mess. You filed this patent and you didn't ever expect it to be a child of the parent you know. I mean I can tell what happened during prosecution. So where is the support? The characterization as a mess is probably accurate Your Honor. But to answer your question. I take it you didn't prosecute it. I did not. Nor did anyone at my law firm. But to answer your question, there is support. It's not, the parent is not littered with support but the support is there. Okay where's the support in the parent for the child? With respect, the two missing claim limitations in the patents and suit that are at issue are the 12-gauge shotgun shell that is used to house the projectile before it is fired and the use of lead shot as the ballast. So let's take the 12-gauge shotgun shell as at first. In the parent which issued as the 742 patent at page A352 in the record, column 1 lines 20 to 25 explicitly teaches that at the inventors disclose and teach that to achieve the object you load the weapon shell. That disclosure doesn't limit the type of weapon shell that needs to be used. It doesn't limit it by size or by type. And I can see that the specific examples in the parent are limited to 37mm shells and 40mm shells. Claims are directed to those types of shells in connection with the non-lethal projectile. But the only evidence before the district court on summary judgment of how one of Ordinary Skill and the Art would understand the disclosure of the parent is that one of Ordinary Skill and the Art would understand the disclosure to be broader than just 37mm and 40mm shells. The record contains an unrebutted affidavit from a Mr. Lester Roan who is a recognized expert in munitions. To make sure I understand your argument, would your argument be that the discussion of 12-gauge in the portion of the patent that pertains to prior art, when it discusses 12-gauge then and then when it says the object of this invention is to overcome the shortcomings of that, they weren't talking about 12-gauge, they were talking about the way the bag is folded, that kind of thing, right? Or the way the bag isn't folded or something like that. What are those shortcomings that one of Skill and the Art would understand it was sort of disavowing? It's an important question and I'm glad you asked it. The reference to the prior art use of the 12-gauge shotgun shell, what was being criticized there was the shape of the projectile. There was no criticism whatsoever of the use of a 12-gauge shotgun shell. And in fact, the inventors had just a few years earlier filed a patent application on a 12-gauge shotgun shell with the exact same projectile. And so when you get down to the object of the invention and it teaches the generic weapon shell, there was no criticism above of the 12-gauge. What the invention is directed at and the reason why this notion over what shell is used is actually less important is that the invention is directed towards the projectile. And what it's housed in is, frankly, incidental to the actual invention. And where the inventor has said that at the time it was well known to use a 12-gauge shotgun shell and then a few lines down in the patent says that you make use of my invention by putting it into a, quote, weapon shell, I think that you then at least have to ask, well, how would one of Ordinary Skill and the Art interpret that? And that's what Mr. Roan did in connection with the summary judgment opposition that my client filed. And Mr. Roan testified that when he read that term weapon shell, he recognized it, he called it in his affidavit a genus term. And he said that he recognized it as a genus term that would include a variety of different size shells. And among the shells he said that he would understand would have been included were the types of shells that were described in the 562 patent, which is the grandparent application. Is it enough for him to simply say that's what he would have understood? Or is something more required? Our precedent seems to suggest that the missing descriptive matter must necessarily be present. Yes. That's quoting from Martin B. Mayer. I mean, here there is no, the disclosure doesn't necessarily indicate that a 12-gauge shell is part of the invention in the 742 patent. In the precedent of this court, there are a number of cases that talk about inherently being present. But the perspective of the question that's asked, is it disclosed, is asked from the point of view and the knowledge base of a person of Ordinary Skill. Would a claim to a 12-gauge shell in the 742 patent or in the application that led to the 742 patent have been new matter? No. Because of the claim to priority to the grandparent application, which was fully supported in the grandparent. The grandparent is... Well, there still has to be disclosure in the application itself. It would have been covered... You're adding a claim to an application, you've got to have support. Yes. Whether you're entitled to priority is a separate question. But the first question is, is there support in the application itself? So my question is, in the face of the description as we see it, would a claim to a 12-gauge shell have been considered new matter in that application? No. We believe it would have been supported by the disclosure of the generic weapon shell and the reference in column one at the very beginning about the prior art use of a 12-gauge shotgun shell. But that's a reference to the prior art. Well, again, the reference to the prior art was actually, it was criticizing the shape of the beanbag that was used in that prior art, but it was not in any way criticizing the use of a 12-gauge shotgun shell. Which, again, is incidental to the actual invention. Are you suggesting that because the word weapon shell generally is used in column one, that a claim to any shell of any size would have been supported? Well, I think you have to, again, go back to what one of ordinary skill in the art would have known at that time and would have known was used for these type of projectiles. It's a relatively small genus. It's what I believe the import of Mr. Roan's testimony was in his affidavit. And whether any other shell would be supported, I don't know. But what Mr. Roan testified to was that as one of ordinary skill in the art, he understood when he read weapon shell that that included a 12-gauge shotgun shell. Because that was a very common type of shell that was used at the time to house a non-lethal projectile. Dependent upon the grandparent or the parent? I'm sorry, I'm not... Dependent upon the parent or the grandparent disclosure? Mr. Roan, in his affidavit, was focused in on the disclosure in the parent of the generic term weapon shell. The 5-6-2. The 7-4-2, your honor. 7-4-2. And he then gives about five or six reasons in his... Wasn't he focused on the generic description of weapon shell in light of the disclosure in column one of the 12-gauge shotgun shell being a type of weapon shell that he is discussing? He was referencing the grandparent application as something that everyone in the art knew at the time. I take that as a frame of reference. He is saying, look, I'm of skill in the art. Here's what I know. And he was trying to not present a conclusory affidavit. Here's why I know it. I know when I read weapon shell that it includes 12-gauge because that's what everyone's using at that time. And here's a patent in which they specifically used a 12-gauge shotgun shell to house a non-lethal projectile. In fact, the same non-lethal projectile that's in the parent. Could you take a minute and address lead shot? Yes. The lead shot, I actually think, is a much clearer case in our favor. It's certainly a less close call. The parent application at page A353 in column four, starting on the bottom of line 20, teaches, however... Now, just to back up very quickly, the parent, the examples given in the parent were rubber pellets. But the parent says, however, it is to be understood that particulate ballast pellets of materials other than rubber can be used and provide similar projectile weight and volume to achieve low lethality consequences. And so the only evidence on summary judgment that was before the court was Mr. Roan's testimony. And Mr. Roan says, I read that. I understood exactly what that meant. That was talking about a genus description of different types of ballast materials that can be used. And I understood that to include lead shot. And the way he says lead shot is he makes specific reference to the grandparent. He says, I understand that the ballast that was disclosed in the 562 patent was, it's included in that description of particulate ballast pellets of materials other than rubber. And so on the summary judgment record, Mr. Roan's testimony was completely unrebutted. The defendant in the case had a munitions expert. They did not put on an affidavit that rebutted this testimony in any way. If you had a written description that said fastening means is a screw, let's not make it a means, just a fastener is a screw, and then it said you could use other kinds of fasteners, have you automatically provided written description support for glue and tape and nails and everything else? Just by use of the word, just by saying, and other similar things could be used. Yes. Is that enough to satisfy written description, or does that fall into the camp of our precedent that says it's not enough for it to be obvious in light of what you've told us? It actually has to have been disclosed. Yeah, there is a line that needs to be drawn. Where it's drawn, I'm not sure. But I can tell you that the answer to your question would depend on how broad of a genus we're talking about. Are we talking about is it just, you know, nails and screws, or is it nails and screws and tape? In the hypothetical you gave, it could be a very broad genus, and it would depend on what one of ordinary skill in that art would understand the term fastener to mean. In this case, where you're talking about not just, you know, different types of weapon shells, but weapon shells for a specific purpose, a non-lethal projectile, it's a very narrow genus. It may very well be limited to just the three that we're talking about in this case, 12-gauge, 37-millimeter, and 40-millimeter. But the fact is that Mr. Roan testified that he recognized weapon shell includes a 12-gauge shotgun shell, and that's unrebutted, and on summary judgment, that at least- I'm talking about lead shot. Oh, I'm sorry. And the argument's the same. He recognized that the disclosure on the ballast pellets of material other than rubber included lead shot. The argument's the same, and the result's the same, because it's unrebutted, it's summary judgment, and that factual inference should have been drawn in the plaintiff's favor. He reached that conclusion, that is. For what reason? In other words, why did he say it supports lead shot as opposed to, you know, polypropylene pellets? Well, he lists-I believe there are three reasons that he lists, Your Honor, in his affidavit. He says that, first of all, it would have been known at the time, lead shot was known at the time to be used in nonlethal projectiles. He says that the lead shot would have served the purpose. He said that lead shot had already been used by the inventors for this purpose, and he said that it was well known at the time that lead shot could be used as a ballast for creating low-lethality beanbag-type projectiles. Now, it seems to me those reasons might apply to any number of different things. Are you saying that if those reasons applied to other things, like stainless steel pellets or polypropylene pellets, that those, too, would be supported by this disclosure? Well, when Mr.-the answer is I don't know. All Mr. Rohn's testimony was, was when he read the term, you know, that phrase, the ballast pellets of materials other than rubber, of Warner & Scone, he recognized that included lead shot. It could be good because he thought that he knew of lead shot, and he thought, well, okay, I'm aware of lead shot, and lead shot would do the same thing, would meet the characteristics. But that's his sort of assessment of what substitutes he might think would be appropriate or reasonable substitutes. It seems to me that's a different question from does this disclosure show that the inventor at the time had possession of that specific thing, lead shot? Not that some expert later on or some one of Warner's skill in the art later on might have thought lead shot was an appropriate substitute, but whether there was possession of that specific thing at the time. And it's right to challenge that, Your Honor, but it's a question of fact. And the forum to challenge that and to challenge his opinions on that would have been a trial. It would have been one thing if the district court had simply said, you know what, I'm not going to pay attention to Mr. Rohn's affidavit, or it was conclusory, or it was wrong. The district court never even mentioned it. The district court completely ignored it. It's not cited anywhere in the decision. And it was in the record. It was in connection with opposing summary judgment. There was nothing that rebutted it. At least a trial is necessary to vet the very question Your Honor just asked. I mean, I certainly agree with you that it's a question of fact. And I guess the issue that I'm wrestling with here is whether there is enough here in this disclosure to create a genuine issue of fact that there might be support, that the argument that it was possessed at the time is sustainable. Because if you don't get over that threshold, then even though it's a question of fact, there's no genuine issue as to whether there's support then. That's enough. Were it not for the testimony of Mr. Rohn, that may well be a problem. But the only thing in the record about what one of our disclosures would understand, the disclosure on the ballast and on the weapon shell, is that the only testimony is that one of Ordinary School of Art would have understood it to include 12-gauge shotgun shells and would have understood it to include lead shot. And that's the test. It's from the perspective of one of Ordinary School of the Art. We just want a trial on that. That's really what we want. I just have one question without taking up more of your time. If, in fact, the 12-gauge shotgun shell is misidentified in the patent description and it's not been corrected, does that make a difference? I'm not completely—are we talking about the parent at this point? Well, I'm talking about the 562 patent. Okay, the grandparent. Right. When you're looking at the 12-gauge shotgun for specificity, you're trying to enter that as part of the disclosure. It shows a 12-gauge shotgun shell being 2-1⁄2 or 2-1⁄16 inch long in the diameter of 3⁄8. That's not an identification of a 12-shotgun shell. 3⁄8 is a little bit too small for it, is it? I don't know the answer to that. I mean, I was hoping you would go with length because I knew the length, but the diameter I'm not— The diameter is not 3⁄8, believe me. And that has not been corrected. So does that really disclose a 12-gauge shotgun? I think if you look at the figures of the grandparent, Your Honor, there's a sufficient disclosure in the grandparent to convey that what the inventor was inventing was a nonlethal projectile that used a 12-gauge shotgun shell. And I think that there's a phrase— Was this issue raised below or anything? It was not. Okay. Thank you. But it's still incorrect. So if you go back to try, you might have to correct it. I will take that back, Your Honor. We're not going to entertain a shotgun approach. Thank you. Thank you, Your Honor. We'll restore two minutes of your rebuttal time. Mr. Campbell. Thank you. May it please the Court. I tried to bring in a shotgun shell, but I was stopped at security on the way in. Just a few minutes ago, this Court decided, Ariad versus Eli Lilly, and one of the things they decided in that case is that under the written description requirement, we look at the four corners of the patent. In this case, the four corners of the 742 patent. Nowhere in the 742 patent is lead shot mentioned. Well, it does say on column four, rubber pellets. It says particulate ballast pellets and materials other than rubber can be used and provide similar weight and volume to achieve low lethality consequences. Why isn't that adequate to identify the one of skill in the art lead shot? Not to be obvious to possibly use lead shot, but why isn't it adequate to identify? I mean, isn't lead shot the primary type of stuff that's shoved into these shells? Well, Your Honor, first off, you have to look outside of the patent to know that, right? We would have to look, as their expert did, at the 562 patent, and if you look at Mr. Rohn's declaration, he continually does not isolate himself to the 742 patent, to the patent. No, he talks about what one of skill in the art knows, which is appropriate in light of written description because we've got to interpret these words. I'm worried that your interpretation means they get nothing but rubber, that it isn't enough for them to say rubber and other similar types of things with the same weight and volume. And I'm worried that you're basically saying that you can never use language like that and you're going to limit people to only the exact type of ballast they disclose, and even if one of skill in the art would know exactly what they're referring to when they say other types with similar weight and volume, that language will never be adequate. Well, if one would know exactly what they're referring to, that means it's like inherent or necessarily disclosed. That doesn't necessarily disclose lead shot. It might be obvious, but the court has held several times. Why doesn't it necessarily disclose lead shot and anything else maybe in addition to lead shot? No one's suggested that it refers to anything other than lead shot, but why isn't it necessarily? Well, maybe the question here is not exactly what that means, but what they're allowed to claim. They could have put that exact wording in a claim. But why isn't that necessarily a disclosure of lead shot? Well, I would say there are two reasons. First off, because that whole description doesn't say you can use anything else. It says you can use anything which has the same weight and volume as rubber. Is that more specific? Right, and there's no way that lead shot can have the same weight and volume, which is density, as rubber. We don't even need to ask an expert on that. But you didn't make that argument below. No, we didn't make—well, yes, we did make that argument below. You made the argument and the judge decided this case on the basis of lead shot can't be what this is disclosing because it doesn't have the same weight and volume? I didn't see that anywhere. No, the judge didn't decide it based on that, but we did make that argument. The argument that the judge decided on was kind of the converse of this. And I didn't see any evidence in the record regarding what the weight and volume of lead shot would be. You didn't put on an expert. No, we did not. No, we did not put on an expert. So that's just to turn the argument. We didn't want to create a factual issue, Your Honor, because we thought it was very clear that the way they disclosed it, it doesn't necessarily disclose lead shot. So you tell me, what does that necessarily disclose then? Well, it discloses necessarily exactly what it says. Other materials can be used of similar weight and volume, and you're telling me there's no evidence in the record that lead shot doesn't have a similar weight and volume, and they've got an expert affidavit saying lead shot's exactly what that discloses. So you didn't ask their expert and say, well, is lead shot the same weight and volume? You didn't put it on anybody of your own saying lead shot doesn't have the same weight and volume. So there's no evidence in the record to suggest lead shot does not have the same weight and volume. Other than if you look beyond exactly that and you go back to the 562 patent, what do you see? If you compare the 562 patent and you go beyond the four corners, you look at the grandparent patent and the parent patent, you see what they did. And you see that they took out all reference to lead shot, which implies that this does not mean lead shot. They give an example of their first invention, and I think it's pretty clear from the prosecution history what happened. They came up with an invention, which is a lead shot-filled 12-gauge projectile. They thought they'd adequately covered it. They had another invention later, which is a larger weapon shell, the 37mm and the 40mm, filled with rubber pellets. And that was their second invention. So by removing all reference to lead shot, I think that implies pretty clearly that they didn't intend for this to cover lead shot. Now they could have made a claim to materials other than perhaps rubber pellets that have the same weight and density, but they didn't do that. The question is, can they claim lead shot? Not whether they're entitled to other things. I understand you're suggesting they might have an entitlement to things other than rubber that have similar weight and volume, but I don't understand there to be any evidence in the record that lead shot is not such an animal. There is not specific evidence from an expert, no. Well, is there documentary evidence? Did you introduce sort of a chemistry book or something that shows weight and volume? No, we did not introduce that evidence because we thought it was clear from the record that they weren't disclosing anything but what was in here, which was something that functions like rubber. And they did not try to make a claim in this to lead shot, nor did they include lead shot. Well, something that functions like rubber in the context of being non-lethal consequence, why doesn't lead shot function like rubber in the context of being non-lethal when the bag is properly folded and everything else is done in accordance with the invention disclosure? Well, I think because... That's what's used. Isn't lead shot the primary thing used in these riot guns and stuff? Isn't that the primary thing these shells are stuffed with? Well, I can't answer that. And neither did their expert answer that. And the patent doesn't answer that. So if we look just at the four corners of the patent, we have to go well beyond to try to infer whether you could use lead shot. And if you couldn't use lead shot, now we're not talking about a projectile like they had in the 562, which was a much smaller projectile, one which has to have a smaller weight. Now that we've expanded to a 37 millimeter or a 40 millimeter, which they call grenade launchers, for example, if you put that lead shot in there, you're probably going to have much more than a non-lethal consequence because we're adding a whole lot of pack, a whole lot of punch to that. Doesn't it really depend on the charge that's in the shot itself? Well, I think that would be true, Your Honor, except that we're not talking about here modifying the charge. All they're talking about is the actual size of the projectile. Modifying the size, that's right. Right. Now, what if they used salt pellets? Would that be covered? Salt pellets are used for crowd control. Yes, they are. I would say no because it's not necessarily disclosed. I would say it's probably obvious that you could use that, but it's not necessarily disclosed. And the court has other times said another way of determining the test of whether something is necessarily disclosed is whether it is immediately discernible. In other words, can you look at that and it is just immediately discernible that in reading, for example, you could use something else other than rubber pellets, would that be immediately discernible that that's lead shot? We'd consider that no, nor did their experts say that. Counsel, my problem is, again, going back to this language, they didn't just disclose rubber. They disclosed rubber and they were very clear to say other things could be substituted of similar weight and volume. And given this was summary judgment, don't I have to construe all the inferences in their favor and say, why isn't lead shot, given that their expert says it's what this language means, why isn't it something of similar weight and volume? Well, because it's not necessarily disclosed. It's obvious, for example. If it's an obvious variant to that or obviously that fits, I would agree. But then you're saying we get nothing, that this extra language gives them nothing. If I accept your argument, they have disclosed rubber and nothing else, but they clearly disclosed something else. The question is, what is that something? Well, they could have claimed it that way, is what I'm saying. It's not a question of what coverage they get. It's a question of what they can claim, what they can actually put in a claim and have it not be new matter. That's a question of what the spec discloses. Yes. I read this disclosure to include rubber and something else, and I'm not understanding from you what that something else is. Well, what I'm saying, Your Honor, is it doesn't necessarily disclose lead shot. It could be lead shot. There is something else, right? We don't know what that something else is. Doesn't that make it a question of fact on summary judgment that I have to let that go to a jury? No, I don't think so because it's not a question of claim scope, for example, or doctrine of equivalence or what they get. The question is what they did claim. No, it's what they disclosed. It's not what they claimed. There's no dispute over what's being claimed here. No, what I'm saying is they disclosed something other than lead shot. What the actual words were, they disclosed. Now you've said they've disclosed something other than lead shot. And that's where I'm going to. The actual words they used was something that has the same weight and density as rubber particulate matter. And they could have put that directly in a claim, and that clearly would not have been new matter, and it clearly would have been necessarily disclosed. They could have put that language, the language from the 742 patent. And it says, actually, materials other than rubber can be used that provide similar projectile weight and volume to achieve low lethality consequence. They could have put in the claim that you can use material that has similar weight and volume as rubber pellets. And that would have been fine. Well, I think their argument is they did. They just called it lead shot. Well, you can't do that. That's the question. The question is whether it's necessarily disclosed, whether it's immediately discernible. The question is not whether it's equivalent. And that's essentially what they're arguing. And that's what their expert says is lead shot is equivalent to that. Lead shot is obvious in view of that. But it isn't inherent in that. It isn't necessarily disclosed. There could be many, many other things other than lead shot which fill that language. By the way, I want to point out one other thing to you. That language says the projectile has to have the same weight and volume, not the pellet. Right. So lead shot, even if lead is heavier than rubber, it's the overall projectile. You just use less of it, presumably. Well, that would be proper aside from the fact that they give the projectile size. Now, if you're going to have the same size, you're going to have... In the claim, they don't. No, but in the disclosure. And we're talking about the disclosure here. Based on the whole disclosure, what they can claim. And there's nothing in there that says, well, if you're going to use something heavier, of a heavier density, then we can have a much smaller projectile. And, in fact, when you're reading the whole thing, it talks about the size of the projectile being important and the shape of it and how you stuff it inside of the cartridge. So the key, I think, is that if they're talking about the projectile, we're talking about a projectile of the size that they give, or at least of equivalent size. And if you're going to use lead shot, you're not going to have anything remotely close in size. So I don't think it would fit for a person of ordinary skill in the art within the context of what a projectile is. The other thing I would like to talk about briefly is the weapon shell. Now, they essentially argue that we can disregard what the patent says about what a weapon shell is and just rely on their expert. But the court determined, as a question of law, what weapon shell was. And, in fact, basically like claim construction, the court looked at the 742 patent and determined that a weapon shell was defined, like claim construction, as a question of law, to be a 37 and a 40 millimeter weapon shell or projectile, nothing other than that. And that's in Column 3. That disclosure in Column 3 is not necessarily a definition of weapon shell. That's an embodiment. Well, it goes a little bit beyond embodiments. It goes beyond just saying a weapon shell can be this and this and this. It says, actually, and I'll quote to you, both these weapons and associated shells are intended to be referred to by the designation weapon shells. And, again, nowhere does it say, and they could have put it in there pretty easily, and 12 gauge or and shotgun shells. But it says selected for illustration. I mean, doesn't that imply that it's not meant to be limited to those examples? Why else would you have the word selected for illustration? Well, because those are the ones that were selected to be actually illustrated in the patent. I think that's what that means, not meaning as an example illustration, meaning here's the ones that they disclosed. And, again, if we go beyond the four corners of the patent and we look at what happened, first in the 562 patent and the grandparent patent, they submitted a patent only on a 12 gauge shotgun shell. And they made it very clear they were only referring to that, and that's exactly what they claimed. Here, they take out all reference. If you look at the abstract, they took out reference to 12 gauge shotgun shell. If you look at the title, the title of the parent says it's just 37 and 40 millimeter. If you look throughout the drawings, they took out all reference to shotgun shells and put in 37 and 40 millimeter shells. If you look at the specification, they took out all reference but in the background of 12 gauge. Also, does intent matter for written description? Does intent matter for written description? Isn't written description a matter of whether the public's on notice of something, not whether a patentee intended to? Well, it's what's on notice, but what I'm suggesting is if we're going to go beyond the four corners. Then you think the appropriate thing to do is to look at the patentee's intent? Do you know how many patentees run through the door and say, I intended to disclose that? I don't want to look at the patentee's intent, but I think we can look at what they stated in the chain of things and see what was intended to be disclosed essentially, not what they claimed. So you do want me to look at intent? No, no, no, no, no. I don't want you to look at intent. I don't want you to look at intent in a broad purpose, but I think what we can do is say that when weapon shell was used here, if we look at the other application, it's clear they took out all reference to it. And that is a means of definition, not a means of saying this is what I intended my invention to be. Thank you. Thank you very much. Thank you for the two additional minutes. If you need them. If I need them. I'll be very quick and I'll take that hint, Your Honor. The only thing I want to point out with respect to the argument that Column 3 has a definitional section on weapon shell, I actually read that section entirely the opposite. I view that more as it's more definitional towards 37-millimeter weapon shell and 40-millimeter weapon shell, and it's simply saying that those are among the types of weapon shells that there are. But you also claim those. We do claim those. Those are specific to the claim. They are, and they are, as Judge Moore pointed out, they are listed in Column 3 for illustration purposes. But you also claim them, so you must mean something in Column 3 if you do mean to claim those particular millimeters. And the prosecution history, I think, provides the answer, and that is that this application, the 742 patent, was filed as a continuation in part and ultimately issued as a continuation in part of the grandparent. So there was new matter added to the 742. The new matter was the 37-millimeter and the 40 and then the rubber pellets. Unless Your Honors have any additional questions, I will rest. Case is submitted. Thank you. Thank you very much. All rise. The Honorable is adjourned.